UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MILLWRIGHTS & MACHINERY**                  **CIVIL ACTION**
**ERECTORS LOCAL UNION 729**

                                                                                                                          **No. 10-989**

**VERSUS**

                                                                                                                            **SECTION I**

**GULF ENGINEERING COMPANY, LLC**

## ORDER AND REASONS

Before the Court are cross-motions[1] for summary judgment filed by defendant, Gulf Engineering Company, LLC ("Gulf Engineering"), and plaintiff, Millwrights & Machinery Erectors Local Union 729 ("Local"). For the following reasons, defendant's motion for summary judgment is **GRANTED** and plaintiff's motion for summary judgment is **DENIED**.

### *BACKGROUND*

Gulf Engineering repairs and, when necessary, fabricates industrial machinery in a variety of industries and provides services to petrochemical and power plants.[2] In the course of its business, Gulf Engineering employs machinists and millwrights on both a permanent and temporary as needed basis.[3] On September 6, 2002, Gulf Engineering and the Local entered into a Collective Bargaining Agreement ("2002 CBA"), which stated in pertinent part:

> Article XXVII DURATION OF AGREEMENT
>
> 1.     This Agreement becomes effective September 6, 2002 until September 6, 2003 and shall continue in full force unless either

---
[1] R. Doc Nos. 14,15.
[2] R. Doc. No. 14-1, p.2.
[3] Id.

>party, at least ninety (90) days prior to expiration date, give[s] notice in writing, to the other party of its desire to modify this agreement. Changes may be made at any time by mutual consent.

On March 10, 2003, the Local sent Gulf Engineering a proposed collective bargaining agreement ("2003 proposed CBA") which included modifications to the 2002 Agreement.[4] The proposed agreement contained two appendices that were not included in the 2002 CBA and it added a provision that implemented a limit on crew size.[5] The proposed agreement would have also superseded the 2002 CBA by going into force immediately on March 10, 2003.[6] Gulf Engineering rejected and refused to sign the 2003 proposed CBA.[7] On February 1, 2007, the Local proposed another collective bargaining agreement ("2007 proposed CBA"), which Gulf Engineering again rejected and refused to sign.

In 2008, Gulf Engineering requested millwrights from the Local. In response to Gulf Engineering's request, the Local informed Gulf Engineering that it would have to sign a collective bargaining agreement. Gulf Engineering again refused to enter into a collective bargaining agreement.

Nevertheless, the Local referred its members to work at Gulf Engineering. The Local also provided Gulf Engineering with work referral forms that stated the hourly wage rates for the workers. The forms included the following language, "[t]he bearer hereof is being referred to you for employment under the terms and conditions of the Craft Agreement in effect by and between you and the Louisiana Carpenters Regional Council."[8] In addition, the Local submitted fringe benefit fund and union dues remittance reports to Gulf Engineering, which Gulf Engineering completed and signed. The remittance forms included the following language:

---

[4] R. Doc. No. 14-2, p.2.
[5] Id.
[6] Id. at p.40.
[7] Id. at p.2.
[8] R. Doc. No. 15-4. The Louisiana Carpenters Regional Council represents the Local. R. Doc. No. 15-3, p.1.

> The undersigned Employer and Union hereby acknowledge that the contributions covered by this remittance report are made in conformity with one or more of the written collective bargaining agreements currently in effect between the Employers signatory to the "Collective Bargaining Agreement" and LA Carpenters Regional Council on behalf of its affiliated local union (Local 1846 and 729) and to which the Employer is also a party. The Employer hereby agrees to be bound in all respects by the provisions of the Amended Agreement and Declaration of Trust dated January 2, 1982, and all amendments thereto of the Welfare Trust, Pension Trust and Training Program, and designates the Employer Trustees named therein and their successors in office, as its representatives on the Board of Trustees, and agree to be bound by all motions taken by said Employer Trustees pursuant to the Agreement and Declaration of Trust.

On October 22, 2009, the Local filed a grievance alleging that on October 19, 2009, Gulf Engineering did not recognize the Local as the exclusive bargaining agent under the 2002 CBA and failed to contact the Local for work performed under its jurisdiction. In response to the grievance, Gulf Engineering stated that no collective bargaining agreement was in effect and, therefore, it refused to submit to arbitration. Out of an abundance of caution, Gulf Engineering also stated its intention to terminate the 2002 CBA.[9] On March 29, 2010, the Local filed this lawsuit against Gulf Engineering to compel arbitration as required by the 2002 CBA.

The parties do not dispute that the 2002 CBA requires arbitration of claims. The issue before this Court is whether the 2002 CBA was still in effect in 2009, when the events that led to the Local's filing of a grievance transpired.

### STANDARD OF LAW

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the

---

[9] R. Doc. No. 15-7, p.2.

initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." Id. at 255; see Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

## *DISCUSSION*

In moving for summary judgment, Gulf Engineering first argues that the 2002 CBA was no longer in effect when the events giving rise to the Local's grievance occurred. Gulf

4

Engineering argues that either the Local's proposal of a modified agreement in 2003 terminated the existing 2002 CBA or, in the alternative, the 2002 CBA did not contain a valid evergreen clause[10] and expired on September 6, 2003. Secondly, Gulf Engineering argues that it did not adopt or ratify the expired 2002 CBA or otherwise enter into a new collective bargaining agreement by its conduct.

In its response and in its own motion for summary judgment, plaintiff argues that its 2003 proposed agreement did not trigger the termination of the existing 2002 CBA and, therefore, the 2002 CBA remained in effect until Gulf Engineering explicitly provided notice of its intent to terminate the agreement in 2009. In the alternative, plaintiff argues that through its conduct, Gulf Engineering has adopted the 2007 CBA

**I.      Termination of the 2002 CBA**

The 2002 CBA plainly states that it "shall continue in full force unless either party, at least ninety (90) days prior to expiration date, give notice in writing, to the other party of its desire to modify this agreement." The interpretation of a collective bargaining agreement, as with any contract, is a question of law. Smith v. Kerrville Bus Co., Inc., 799 F.2d 1079, 1081 (5th Cir. 1986). Collective bargaining agreements should be interpreted based on their plain and literal meaning so as to avoid interference with the private bargain. N.L.R.B. v. South Central Bell Tel. Co., 688 F.2d 345, 353 (5th Cir. 1985).

Plaintiff acknowledges that the 2003 proposed agreement contained modifications to the 2002 CBA and arrived at least ninety days prior to the expiration date. Nevertheless, plaintiff argues that a faxed copy of a proposed agreement fails to qualify as written notice. Plaintiff

---

[10] An evergreen clause allows a contract to renew itself from one term to the next in the absence of a contrary notice by one of the parties. See BLACK'S LAW DICTIONARY 369 (9th Ed. 2009).

argues that it was the parties' intent to set the threshold for written notice of modification higher than merely a faxed notice with no request for an opportunity to meet and confer.

Plaintiff's argument completely ignores the plain and literal meaning of the 2002 CBA duration provision. The term "written notice" describes the form in which the notice must be given, not the method by which the notice must be delivered. The Fifth Circuit has routinely recognized that transmittal via facsimile does not negate the written form of the material. See e.g., Smith v. Xerox Corp., 371 Fed. Appx. 514, 517 (5th Cir. 2010) (written request for termination received via fax); D & J Tire, Inc. v. Hercules Tire & Rubber Co., 598 F.3d 200 (5th Cir. 2010) (written consent delivered via fax). Furthermore, the Court notes that had the parties intended to create a higher threshold for written notice, the parties could have used the language that appears in the Local's 2007 proposed CBA, which states:

> Section 2. Either party may terminate this Agreement by serving written notice to the other party at least ninety (90) days prior to the effective date of termination. Such written notification must be by certified mail and the date of the postmark shall determine the notification date.
>
> Section 3. In the event either party serves notice to amend or revise this Agreement, written notification must be provided to the other party at least sixty (60) days prior to the anniversary date as to the nature of the amendment(s) or revision(s) desired. Meetings must take place no later than thirty (30) days prior to the anniversary or expiration date of the Agreement.[11]

Since such language does not appear in the 2002 CBA, the Court cannot conclude that the parties intended to include such heightened requirements.

In the alternative, plaintiff argues that the modifications contained in the 2003 proposed CBA were not substantial and, therefore, the 2003 proposed CBA cannot qualify as a notice of modification. Plaintiff cites no caselaw in support of this proposition. Based on the plain

---

[11] R. Doc. No. 14-2, p.57.

language of the contract and the lack of any evidence that the parties intended something contrary to such language, the Court sees no reason to read such a standard of substantiality into the provision.

Accordingly, the Court finds that the 2003 proposed CBA served as written notice of a desire to modify the 2002 CBA. Therefore, the 2002 CBA did not continue to be in force after September 6, 2003.

## II.     Adoption through conduct

Plaintiff contends that even if the 2003 proposed CBA operated to terminate the 2002 CBA, Gulf Engineering adopted the expired 2002 CBA through its conduct. "It is well settled that a union and employer's adoption of a labor contract is not dependent on the reduction to writing of their intention to be bound. Instead, what is required is conduct manifesting an intention to abide by the terms of an agreement." N.L.R.B. v. Haberman Constr. Co., 641 F.2d (5th Cir. 1981).

The Fifth Circuit Court of Appeals has addressed facts surrounding the adoption of a collective bargaining agreement on several occasions. In Haberman, the employer had contributed to the union's trust funds for four years, exclusively used union members for its work, observed union holidays, used the union for referrals, paid the union wage scale, and permitted the union to appoint a union job steward. Haberman, 641 F.2d at 356. Based on these facts, the court concluded that the employer had manifested an intent to abide by the labor contract by enjoying its benefits and abiding by its provisions. Id.

In Carpenters Amended and Restated Health Benefit Fund v. Holleman Constr. Co., the employer made contributions and filed reports to the union trust at the request of certain employees. However, the court found support in the record that the contributions were not made

because it believed that it was obligated under the collective bargaining agreement to do so. 751 F.2d 763, 770 (5th Cir. 1985). In addition, the employer did not use the union hiring hall. Id. Based on these facts, the Court found that despite the employer's payment of benefit contributions, the employer had not manifested an intent to be bound by the collective bargaining agreement. Id. at 771.

In Firesheets v. A.G. Building Specialists, Inc., the employer continued to make contributions to the union's trust funds after the expiration date of the collective bargaining agreement and continued to file monthly contribution reports which included language stating that it was bound by provisions of the agreements with the local. 134 F.3d 729, 731 (5th Cir. 1998). However, the employer also engaged in other conduct inconsistent with the original agreement. For example, the employer hired nonunion workers, set wages and made trust fund contributions only for those employees who asked for contributions, did not adjust wage rates and did not give holiday pay to its employees. Id. Based on these facts, the court found that the employer's actions, by and large, were not consistent with the existence of a collective bargaining agreement. Id. In so concluding, the court reiterated that the contribution payments did not evidence an intent to be bound. Id. The court further stated that the existence of some boilerplate language on the record-keeping documents for the contributions did not bind the employer. Id. at 732.

In this case, Gulf Engineering hired millwrights through the union,[12] paid the current union wage rate,[13] and made pension fund contributions on behalf of all union workers.[14] In

---

[12] R. Doc. No. 14-2, p.3.
[13] The 2002 CBA contained a wage provision that stated, "[w]age rates shall be those set forth in the current Labor Agreement of affiliated Local Union No. __...." R. Doc. No. 14-2. The parties do not dispute that Gulf Engineering paid the Local's journeyman millwrights at the wage rates quoted in the work referral forms: a total of $30.26 per hour, which was hourly rate set forth in the 2007 proposed CBA. R. Doc. Nos. 15-4, 28-2. However, the Court also notes that in an affidavit, a representative for Gulf Engineering asserts that, "Gulf Engineering paid these rates based

addition, Gulf Engineering signed fringe benefit fund remittance reports that also included language acknowledging that it was bound by provisions of a collective bargaining agreement.[15] Despite these facts that lend some support to plaintiff's contention, the Court finds that taken as a whole, Gulf Engineering did not manifest an intent to be bound by the expired 2002 CBA. Gulf Engineering refused to recognize the Local as the exclusive bargaining agent after the 2002 CBA expired and it did not contact the Local for all the work it performed in plaintiff's jurisdiction.[16] Gulf Engineering only used the Local's members sparingly for isolated projects every 18 months when it needed workers who were nuclear certified.[17] Further, Gulf Engineering affirmatively rejected and refused to sign the Local's proposed agreements in 2003 and 2007, and again refused to sign a new collective bargaining agreement in 2008.[18]

The fact that Gulf Engineering made employee benefit fund contributions and the fact that language in the work referral forms references a collective bargaining agreement in place do not evidence an intent to be bound. Firesheets, 134 F.3d at 731-32; see also Dugan v. R.J. Corman Railroad Co., 344 F.3d 662 668 (7th Cir. 2003) (finding that contributions on behalf of employees and boilerplate language were weak evidence in light of employer's clear unwillingness to continue its relationship with the union). Accordingly, the Court concludes that Gulf Engineering did not adopt the expired 2002 CBA through its conduct.

In its motion for summary judgment, plaintiff argues that it is also entitled to relief based on the theory that Gulf Engineering has adopted the 2007 proposed CBA. This theory of relief does not appear in plaintiff's first amended complaint which only alleges violation of the 2002

---

on [the Local's] request, and not because it believed it was obligated to do so pursuant to any CBA between it and [the Local]." R. Doc. No. 14-2, p.3.
[14] R. Doc. No. 14-2, p.3.
[15] Id.
[16] R. Doc. Nos. 14-2, p.4; 15-7, p.1
[17] R. Doc. Nos. 14-2, p.3; 19-5.
[18] R. Doc No. 14-2, pp.2-3.

CBA.[19] In fact, no mention of the 2007 proposed CBA appears. Plaintiff is not entitled to recover on an unpleaded claim. See <u>Keller Williams Realty Southwest v. Chrysler First Bus. Credit. Corp.</u>, 2001 WL 43557 (5th Cir. Jan. 9, 2001) (upholding district court's denial of summary judgment on the ground that the claim was not pleaded in the original complaint); see also <u>Cutrera v. Board of Supervisors of Louisiana State Univ.</u>, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").[20]

For the foregoing reasons,

**IT IS ORDERED** that the defendant's motion[21] for summary judgment is **GRANTED** and plaintiff's motion[22] for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, January 18, 2011.

                                        LANCE M. AFRICK
                             UNITED STATES DISTRICT JUDGE

---

[19] R. Doc. No. 3.
[20] Even if plaintiff were granted leave to amend its complaint to include its claim of adoption by conduct of the 2007 proposed CBA, the Court observes that the Court's reasons set forth with respect to denying summary judgment on plaintiff's claim of adoption by conduct of the expired 2002 CBA would similarly apply to a claim of adoption by conduct of the 2007 proposed CBA.
[21] R. Doc. No. 14.
[22] R. Doc. No. 15.